### 3040. JOHNSON *v.* KLASSETT.

1. A running book account, all the items of which have matured at the time of the suit, can not be split into separate parts, without the consent of the defendant, for the purpose of bringing each part within the jurisdiction of a justice's court; the account constitutes one demand, and all the items thereof must be included in a single suit. If the running account thus indivisible is divided into separate parts, a recovery upon one part would ordinarily be a bar to a subsequent action for any items of the account not included within the first suit.

2. Where a running account containing debits and credits is divided into two parts and a suit is brought on each part, and to the first suit a plea to the jurisdiction is filed in the court in which the suit originated, on the ground that the account has been improperly split into two parts for the purpose of giving the court jurisdiction, which it otherwise would not have of the entire account, and this plea is decided against the defendant on the necessary ground that the account was, as a matter of law, divisible, and he acquiesces in such adverse decision, although the decision was erroneous, he is estopped from renewing the same objection to the second suit, brought against him for the items of the account not included within the first suit.

DECIDED SEPTEMBER 11, 1911.    REHEARING DENIED SEPTEMBER 28, 1911.

Certiorari; from Fulton superior court—Judge Bell.    October 11, 1910.

The facts upon which the questions arise in this record, substantially stated, are as follows: Klassett bought groceries from Johnson as needed, agreeing to pay for them by the week, and for some time carried out this agreement; but he fell behind in his payments and owed Johnson about $130 on a running open account for the years 1905 and 1906. Johnson split the account into two parts; including the items for 1905 in one part, and the items

for 1906 in another part, and brought two suits in a justice's court against Klassett for the separate parts of the account. Both suits were carried to the superior court by appeal. When the suit for sixty-odd dollars, including the items for 1906, was reached for trial in the superior court, the defendant filed a plea alleging that the plaintiff had split a solid account in order to bring it within the jurisdiction of the justice's court, and that this was unauthorized by law. This plea seems not to have been sustained in the superior court, and a verdict was rendered for the plaintiff for the full amount of the suit. Subsequently the appeal in the other suit, involving the items for 1905, was dismissed in the superior court, and the plaintiff sued again for these items in the justice's court, and to this suit a plea of res judicata was filed, under section 4335 of the Civil Code (1910), setting up the judgment in the first suit in the superior court as an adjudication of the same subject-matter, and insisting that the items included in this judgment were identical with those in the suit then pending. When this case was reached for trial in the justice's court, the plaintiff, through his attorney, confessed judgment in open court for the defendant; and thereafter he entered an appeal from that judgment to a jury in the same court. When the appeal came on to be heard, the defendant made two motions before the magistrate: First, that the court dismiss the appeal, on the ground that it was illegal and void because the defendant had filed a plea in bar to the suit, which, if well pleaded, precluded the plaintiff from recovery for all time, and the plaintiff had made a solemn admission in judicio that this plea was well pleaded, and therefore neither an appeal nor a certiorari would lie. Second, that the magistrate direct the jury to sign up a verdict for the defendant, on the ground that the defendant had filed a plea in bar and the plaintiff had confessed a judgment in favor of the defendant in open court, and this admission in judicio was conclusive between the parties, and, although the technical right of appeal existed, it could avail the plaintiff nothing, and the only verdict that could be lawfully rendered under the facts was a verdict sustaining the plea in bar. The court overruled both of these motions, and the case proceeded to trial before the jury.

The plaintiff testified, in proof of his account, that in 1905 he opened up an account with the defendant, who at that time said that "he could pay by the week, and would pay by the week," and

the plaintiff sold him groceries, charging·them to his account with this understanding; and that for a while the defendant did pay by the week, but finally got behind, and that the account sued on was just, true, correct, and unpaid. The defendant introduced no evidence attacking the correctness of the account, but introduced a certified copy from the record showing the other suit for the account of 1906 and the filing of the plea in bar. The verdict was for the full amount of the suit, $67.50. The defendant sued out a writ of certiorari, which was sustained by the judge of the superior court, who thereupon entered a final judgment in favor of the defendant; and to review this judgment a writ of error was brought to this court.

*Horton Brothers & Burress,* for plaintiff.

*C. B. Rosser Jr.,* for defendant.

HILL, C. J. (After stating the foregoing facts.)

The questions of law raised by the facts in this case seem never to have been distinctly decided by our Supreme Court, but the principle involved has been before the court on several occasions, and we think is embraced in § 4389 of the Civil Code of 1910, which declares that, "If a contract be entire, but one suit can be maintained for a breach thereof; but if it be severable, or if the breaches occur at successive periods in an entire contract (as where money is to be paid by instalments), an action will lie for each breach; but all the breaches occurring up to the commencement of the action must be included therein." It is true that this section relates by its terms to breaches of a contract. But in the case of *Floyd* v. *Cox,* 72 *Ga.* 147, the Supreme Court construed a running account, continuing through several consecutive years, where it was added up at the end of each year, the credits subtracted, and the balance carried forward to the next year, as one entire claim,—"one account and one indebtedness." In *Thompson* v. *McDonald.* 84 *Ga.* 5 (10 S. E. 448), it was held that "an account resulting from a single contract can not be split into two causes of action, the whole being mature when the first action was brought." That was a suit on an account for sawing lumber. Certain of the items of the account had been included in a former suit, but, on the trial of the former suit, were stricken from the bill of particulars. The Supreme Court held that there could be no recovery in the second suit, because when the first suit was brought, the items now sued

for, as well as the rest of the general account, were due, and, the plaintiff having voluntarily withdrawn these items from the account, a second suit could not be brought for them, "the rule being that all breaches of a contract up to the time of bringing action on the same must be included in the one action;" citing *Macon & Augusta R. Co.* v. *Garrard,* 54 *Ga.* 327; *Evans* v. *Collier,* 79 *Ga.* 319 (4 S. E. 266). In the case of *Atlanta Elevator Co.* v. *Fulton Mills,* 106 *Ga.* 427 (32 S. E. 541), it was held that a creditor can not bring an action against his debtor for an amount admitted to be due upon an account resulting from a single contract, the whole debt being mature when the suit is brought, and afterwards maintain a second action for the balance alleged to be due on the same account in excess of the amount originally sued for.

The whole question resolves itself into this: Was the general running account against the defendant a divisible demand, which could be separated at the will of the plaintiff and collected by several actions? If the running account was an entire and indivisible demand, the judgment in the suit for the account due in 1906 was a good plea in bar to the account for 1905; for, at the time of this second suit for 1905, all the items of the account were matured and past due. The case of *Parris* v. *Hightower,* 76 *Ga.* 631, is relied upon by plaintiff in error. In that case, however, it seems that there was an express agreement that the account for goods sold on the same day should be divided into four distinct parts due on different dates, and, in view of this agreement, the Supreme Court held that the plaintiff had the option to bring separate suits on each portion of the account, or to unite them. In a well-considered case by the Supreme Court of Iowa (Williams-Abbott Electric Co. *v.* Model Electric Co., 134 Iowa, 665) it was held that "the sale of goods, although at different times and upon different orders, payment for all of which has matured, constitutes but a single demand, and separate suits based upon each distinct order and sale can not be maintained, although in itself a complete transaction; and a recovery upon one such order and sale is a bar to an action upon the other sales then due." And in speaking for the court the learned Chief Justice says (p. 668):. "The proposition that a continuous book account is entire, and can not without agreement of the parties be split into separate and distinct demands to form a basis for several suits, is one which has general recognition by the

authorities, and is no longer open to question;" citing many authorities in support of this proposition. All of these authorities uphold the contention that an account consisting of several items, all of which are due and payable, constitutes but one demand, and if the party to whom the account is due sees fit to bring suit for a part thereof and recovers judgment, such recovery will be a bar to further suit upon the remainder of the claim. See, also, to the same effect, Buck v. Wilson, 113 Pa. St. 423; Hughes v. Dundee Trust Co., 26 Fed. 831, and many cases there cited. All of these cases are based upon the principle that both law and equity abhor a multiplicity of suits, and will not permit a plaintiff to divide the items of an account then due, for the purpose of harassing the defendant and subjecting him to unnecessary suits. The only just and sound rule—a rule just to both parties—is to compel the plaintiff, where all of the items of the account are due when suit is brought on a running account, to include the whole account in a single suit. In the case now under consideration, if the plaintiff had the right to split the account for $130 into two parts, thus bringing it within the jurisdiction of the justice's court, and unnecessarily harass the defendant with two suits, he could have split the account into weekly amounts and brought any number of suits against the defendant; which would have been an intolerable hardship and one which the law would not permit.

It is therefore clear to our minds that the plaintiff should not have been permitted to divide this account into two parts for the purpose of obtaining jurisdiction in the justice's court, but the suit should have been relegated to the court having jurisdiction of the entire amount. This would not have deprived him of the right of asserting any part of his claim, but would simply have compelled him to assert his entire claim in one suit. The proper place to make this question was the place where it was raised—in the superior court—when the first case in which a judgment was rendered was tried. Then and there the plaintiff's right to split his account into two parts was directly challenged; and, in our opinion, it being conceded that there was but this one account, this plea should have been sustained; but, through an erroneous view of the law, this plea was decided against the defendant's contention, and judgment was entered up against him accordingly. He submitted to this judgment. and the question was therefore res adjudicata so

47

far as he was concerned, and he could not be subsequently heard, in answer to the second suit, to raise the same question which had been decided by the superior court, and in the decision of which he had acquiesced. There must be an end to litigation, and the end was reached on this point, so far as the defendant was concerned, when the question was raised by the suit tried in the superior court and decided against him and he submitted to the decision. For this reason we are constrained to hold that the learned judge of the superior court erred in sustaining the certiorari.

*Judgment reversed.*